**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JASON SENNE, on behalf of himself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 10 C 5434** |
| **VILLAGE OF PALATINE,** | ) ) ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Jason Senne has sued the Village of Palatine, alleging that its practice of printing

on parking tickets personal information obtained from motor vehicle records violates the

Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2721. The Village has moved for

summary judgment. For the reasons stated below, the Court grants the Village's

motion.

## Background

On the night of August 19, 2010, Jason Senne parked his car in front of his

house on East Heron Drive in Palatine, Illinois. The next morning, he noticed a parking

ticket underneath one of his car's windshield wipers. The ticket, for $20, had been

placed there at 1:35 A.M. the night before and was signed by Officer Joseph Christians.

It said Senne had violated Section 18.86 of the Palatine Code of Ordinances, which

prohibits parking for longer than fifteen minutes between 1:00 a.m. and 6:00 a.m.

Printed on the ticket were Senne's name, driver's license number, date of birth, sex,

height and weight, and license plate number. The ticket also listed for Senne an address other than the one where he resided. The parties dispute whether it should be considered "Senne's address." Senne testified in a deposition that the house at that address once belonged to his mother.

Christians testified during his deposition that he placed the ticket face down under one of the windshield wipers on Senne's car. The Village contends that some of the information on the ticket was obscured, including Senne's birthdate, operator license number, height, and weight. Senne responds that this is only because the versions of the ticket that are in evidence are faded and of poor quality.

About one week after receiving the ticket, Senne filed suit in this Court under the DPPA. He alleged in his complaint that the Village "is knowingly obtaining, disclosing, and using personal information for an unpermitted purpose"—the distribution of personal information by placing it on parking tickets such as Senne's. Compl. at 7. Senne sought certification of the case as a class action on behalf of "[e]ach and every individual who received a parking citation in the Village of Palatine" during the previous four years, if the citation included the individual's personal information. *Id.*

On September 1, 2011, the Village moved to dismiss Senne's case for failure to state a claim. The Village argued first that the DPPA did not apply to its placement of personal information on parking tickets, because the placement fell under one of the "permissible uses" outlined in 18 U.S.C. § 2721(b). Senne responded that the Village's actions did not qualify for any of the exceptions listed in section 2721(b).

On September 22, 2010, this Court granted the Village's motion to dismiss. The Court concluded that the Village had not disclosed personal information within the

meaning of the DPPA, because it had not turned over the information to anyone. In July

2011, a panel of the Seventh Circuit affirmed this Court's decision. The Seventh Circuit

then vacated the panel's decision and granted an *en banc* rehearing. In August 2012,

the Seventh Circuit reversed this Court's decision on the motion to dismiss. *See Senne*

*v. Village of Palatine*, 695 F.3d 597 (7th Cir. 2012).

The Seventh Circuit first held that the Village's placement of the parking ticket on

Senne's windshield constituted a "disclosure" for purposes of 18 U.S.C. § 2721.

Because the statute does not allow a DMV to "knowingly disclose *or otherwise make*

*available*" protected personal information, the court stated, there is "little doubt about

the breadth of the transactions Congress intended to regulate." *Id.* at 602 (emphasis

added). The court concluded that, given the sweep of the statute's language in its

references to "disclosure," Congress intended the Village's action to fall within the reach

of the statute. *Id.* at 602–03. The Seventh Circuit also addressed the Village's

argument that the placement of the ticket was not a "disclosure" because no one other

than Senne saw the ticket. The court disagreed, citing the "broad language employed

by Congress" in section 2721, as well as the fact that the statute by default prohibits

sharing of the information on the ticket, with a limited number of exceptions. The court

stated:

> [t]he action alleged here, placing the information on the windshield of the
> vehicle in plain view on a public way, is certainly sufficient to come within
> the activity regulated by the statute regardless of whether another person
> viewed the information or whether law enforcement intended it to be
> viewed only by Mr. Senne himself.

*Id.* at 603. To hold otherwise, the court said, would be to "misunderstand[ ] the textual

scheme that Congress has forged." *Id.*

Having held that the Village's placement of the ticket on Senne's car constituted a disclosure, the court then turned to whether the disclosure fell within the permissible uses of personal information under section 2721(b), as the Village contended. The court noted that the Village had not "describe[d] in any length how all the information printed on the ticket served either purpose; instead, it maintains, in effect, that the statute does not require that analysis." *Id.* at 605. The court rejected this position. It noted that each of the cited exceptions under section 2721(b) includes the phrase "[f]or use" and stated that these words "perform a critical function in the statute and contain the necessary limiting principle that preserves the force of the general prohibition while permitting the disclosures compatible with that prohibition." *Id.* at 606. Therefore, "the actual information disclosed—i.e., the disclosure as it existed in fact—must be information that is *used* for the identified purpose." *Id.* In addition, "[t]he disclosure actually made under the exception must be compatible with the purpose of the exception." *Id.* To reemphasize this point, the court said that in light of Congress's stated concern with privacy and security issue, "the disclosed information actually must be used for the purpose stated in the exception." *Id.* at 609. The court added, however, that it did not construe "use" in the statute "to mean 'necessary use,' nor do we require the Village to adopt some form of 'best practices' not commanded by the statute." *Id.* at 606 n.12.

The Seventh Circuit went on to conclude that whether the Village's uses of the information actually complied with § 2721(b) could not be resolved on review of a motion to dismiss and that "[f]urther proceedings will permit the parties to explore this question." *Id.* at 608. The court added, however, that "[w]ith respect to some of that

information [on Senne's ticket], it is difficult to conceive, even on a theoretical level, how such information could play a role in the excepted law enforcement purposes." *Id.*

The Village filed the present motion for summary judgment on August 5, 2013.

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, a court must "constru[e] all facts and draw[ ] reasonable inferences in the light most favorable to . . . the non-moving party." *Mullin v. Temco Machinery, Inc.*, 732 F.3d 772, 776 (7th Cir. 2013). "To determine whether genuine issues of material fact exist, we ask if 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

The Village has moved for summary judgment against Senne, arguing first that its "use" of the information it printed on Senne's parking ticket was permissible under 18 U.S.C. §§ 2721(b)(1), (b)(2), and (b)(4), citing the testimony of its police chief to describe a variety of ways the Village uses the information. Second, the Village contends that it did not "disclose" the information for two reasons: the ticket was placed face down on Senne's car underneath his wiper blade and thus its information was not disclosed to anyone, and some of the information on the ticket was obscured and also was not disclosed for that reason.

Senne responds that the Village forfeited its right to raise "new" issues in support

of its motion. He also contends that the Village's arguments about section 2721(b) are irrelevant, because his suit is filed under section 2721(c), and the issuing officer and his department's finance department do not "use" the information printed on the ticket. Finally, Senne argues that the Seventh Circuit already rejected the Village's arguments that it did not disclose the information for the purposes of the DPPA.

### 1. Forfeiture

Senne argues that the Village makes "new claims" to support its motion that "were not developed timely [sic] and are, waived [sic]." Pl.'s Resp. at 14. Specifically, he contends that the Village "could have, but failed to, raise" several of the arguments in its brief at the motion to dismiss phase, including during appeals to the Seventh Circuit and Supreme Court. *Id.* at 3.

This argument does not pass the straight-face test. Senne cites no case holding that a party forfeits an argument at summary judgment if it does not make the argument as part of a motion to dismiss. Furthermore, the Seventh Circuit directly suggested that the parties further develop the facts on the questions presented here. *See Senne*, 695 F.3d at 608.

### 2. Disclosure

The Village advances two reasons why its inclusion of drivers' personal information on parking tickets did not constitute a disclosure under the DPPA. First, it contends that the information on the ticket on Senne's windshield was not "in plain view," a point the Seventh Circuit had referenced. *See Senne*, 695 F.3d at 603 ("The action alleged here, placing the information on the windshield of the vehicle in plain view on a public way, is certainly sufficient to come within the activity regulated by the

statute . . . ."). Because the ticket was face down on Senne's windshield, the Village

says, the information on the ticket was not in plain view and therefore not "made

available" to the public. Def.'s Mem. at 11–13. Though the Village concedes that

passers-by could have lifted the ticket off the car to read it, this, the Village argues,

would constitute criminal theft or tampering with a motor vehicle. In response, Senne

argues that the Seventh Circuit already decided this question when it determined that

the Village disclosed his personal information in the manner regulated by the DPPA. He

argues that "it is the act of leaving the information on an unattended vehicle which

makes it available and not whether the information can be read without exerting some

effort." Pl.'s Resp. at 10.

The Court agrees with Senne. The Seventh Circuit did not rest its conclusion

that the Village had disclosed Senne's information solely on the fact that the information

was "in plain view." Rather, the court considered and rejected essentially the same

argument the Village makes now: it did not disclose Senne's information because no

one else saw it. The court stated:

> First, such an interpretation ignores the broad language employed by
> Congress to define and regulate disclosures. Second, such a reading
> turns the statutory structure on its head. The default rule of the statute is
> that the DMV, and any person or entity authorized to view its records, is
> *prohibited* from sharing the information. The statute then *authorizes*
> specific disclosures—each of which, as we shortly shall examine, has a
> limited object and a limited class of recipients. *See* 18 U.S.C. § 2721(b).
> To suggest that the meaning of the term "disclose" is so limited as to take
> the act of *publication* of protected information outside the statute's reach
> because no specific recipient is proven simply misunderstands the textual
> scheme that Congress has forged.

*Senne*, 695 F.3d at 603. More to the point, the court stated that "it is clear that

Congress intended to include within the statute's reach *the kind of publication* of

information that occurred here, namely, the placement of the printed citation on Mr. Senne's windshield." *Id.* (emphasis added).

The same reasoning applies here. The simple act of placing a ticket face down on a windshield, rather than face up, is still a publication of the information and does not render it unavailable to the public. The ticket was still there in public view, with its information available to anyone who chose to pick it up. The fact that picking up the ticket might violate the law does not alter the fact that Village disclosed the information on the ticket within the meaning of the DPPA.

The Village's second argument is that it did not disclose "any 'personal information' because, other than Senne's name and gender, the remainder of Senne's 'personal information' was either incorrect or illegible." *Id.* at 14. With regard to the information that it argues was legible—Senne's name and gender—the Village says the inclusion of such information on parking tickets "is incredibly common" in Illinois. *Id.* at 15. It further contends that Illinois Supreme Court Rule 572 requires tickets to include a person's name in order to be adjudicated and that Senne's gender was "obvious from his name alone." *Id.* Senne responds that a disclosure need not include all of the personal information named in the DPPA to violate the statute, and that any legible disclosures still constitute a violation.

The Village's claim of illegibility is not entirely accurate. It argues that "much of [Senne's] operator's license number, his date of birth and his height and weight" are "obscured and illegible" on the ticket. Def.'s Mem. at 14. The Village is correct that the height and weight figures are hard to read, but Senne's driver's license number and date of birth can be discerned with minimal effort. *See* Def.'s Ex. J (color copy of ticket).

Further, the Village plainly concedes that at least some of the legible data on the ticket is personal information as the DPPA defines it. It admits that Senne's name could be read, and a person's name, along with his driver's license number, is "personal information" as defined in 18 U.S.C. § 2725(3).[1] The Village at no point argues that to violate the DPPA, a disclosure must include *all* of the types of personal information listed in section 2725(3). And although the Village argues that it is "incredibly common" in Illinois to "includ[e] so-called 'personal information' on parking tickets," Def.'s Mem. at 14–15, that does not excuse it from compliance with the DPPA.[2]

### 3.    Permissible use

The Village argues that its practice regarding parking tickets does not run afoul of the DPPA because the information it prints on tickets "is actually used" for a variety of approved purposes under 18 U.S.C. § 2721(b). Def.'s Mem. at 4–6. The Village describes each of these purposes briefly, some in ways that do not immediately make clear that the information is "used" for the stated purpose, and others in more detail. In response, Senne contends that his suit against the Village is based on section 2721(c), not section 2721(b), and he says the Village has made no argument that its practices comply with section (c). Senne also argues that the uses the Village describes do not

---

[1] In addressing the Village's motion to dismiss, the Seventh Circuit said that "[t]he otherwise protected information actually disclosed here included Mr. Senne's full name, address, driver's license number, date of birth, sex, height and weight." *Senne*, 695 F.3d at 608. Gender, height, and weight are not specifically listed in section 2725(3) as constituting "personal information." It is conceivable that gender , height, and weight are covered as "information that identifies an individual" under that section, but the Court need not decide that issue in order to adjudicate the Village's motion.

[2] The same is true of the Village's argument that Illinois Supreme Court Rule 572 mandates inclusion of personal information on a ticket. Rather, the Rule says only that a document charging an ordinance violation must include the defendant's name and address and that a citation or ticket may be used as the charging document.

explain why the information is printed on parking tickets and that the officers who issue the tickets and the finance clerks who process them do not actually use the information printed on the ticket for any purpose.

Senne may be technically correct that his claim falls under section 2721(c), but that does not alter the outcome. Section 2721(a), the DPPA's baseline prohibition against distributing personal information, applies only to "[a] State department of motor vehicles" along with its officers, employees, and contractors. A DMV may not release such information "except as provided in subsection (b) of this section." 18 U.S.C. § 2721(a)(1). The Palatine police, by contrast, are more likely subject to section 2721(c), which governs the "[r]esale or [r]edisclosure" of personal information by "authorized recipient[s]." *Id.* § 2721(c). However, Senne's contention that his claim is not subject to section 2721(b) is incorrect. Under subsection (c), a resale or redisclosure of personal information is permitted "only for a use permitted under subsection (b)." By those terms, it is necessary to refer to the exceptions in subsection (b) to determine whether someone who rediscloses information has violated the DPPA.[3] The Court therefore will consider whether the uses the Village has listed comply with the permissible uses listed in section 2721(b).

_____

[3] In his response to the Village's motion, Senne also refers to the requirement in section 2721(c) that authorized recipients of personal information who redisclose such information "must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicle department upon request." 18 U.S.C. §2721(c). Senne does not directly allege, however, that the Village failed to keep such information, nor was any such allegation included in his complaint. Furthermore, the DPPA does not appear to authorize an individual to file a civil action for breach of the statute's record-keeping requirement. Under 18 U.S.C. § 2724(a), liability applies only to one who knowingly obtains, discloses or uses personal information from a motor vehicle record.

Under subsection (b), personal information "may be disclosed" if the disclosure falls under one of fourteen different permissible uses. *See Maracich v. Spears*, 133 S. Ct. 2191, 2199 (2013). The Village cites three of these. The first is (b)(1): "use by any government agency, including any court or law enforcement agency, in carrying out its functions." Under (b)(2), disclosure is permitted "[f]or use in connection with matters of motor vehicle or driver safety and theft," among other motor vehicle-related purposes. Finally, under (b)(4), disclosure is allowed "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency . . . including the service of process," among other purposes.

As the Court has indicated, in its earlier decision in this case, the Seventh Circuit ruled that "the actual information disclosed—i.e., the disclosure as it existed in fact—must be information that is *used* for the identified purpose" as set forth in section 2721(b). *Senne*, 695 F.3d at 606. In addition, "[t]he disclosure actually made under the exception [in § 2721(b)] must be compatible with the purpose of the exception." *Id.* "When a particular piece of disclosed information is not *used* to effectuate that purpose in any way, the exception provides no protection for the disclosing party." *Id.*

To support its argument that it actually uses the personal information on its parking tickets to carry out its functions, the Village points to the deposition testimony of John Koziol, the Village's chief of police. Koziol identified more than a dozen "law enforcement purpose[s]" for the inclusion of personal information on parking tickets. *See* Def.'s Ex. D at 36–50. Some of these purposes, in Koziol's telling, indicate that the personal information in question is useful to the police department, but not that its *inclusion on the ticket* is itself useful. For example, he testified that when officers "run

this information"—i.e., learn who a driver is and where she lives by entering her license plate number into a data system—they can determine whether a car they encounter is stolen, or that the owner lives at a protected address, or that police have issued a "BOLO" (be on the lookout) order for a particular car, such as one with a dead body in the trunk.  *See id.* at 36–37.  He gave similar testimony in relation to service of process, saying that the police "want to make sure that we're properly serving someone."  *Id.* at 39.  These purposes might warrant obtaining the suspected vehicle owner's personal information in the first place, but they do not justify its disclosure on the parking ticket. What is at issue in this case is disclosure of personal information, not obtaining it in the first place, or using it before placing it on a ticket.

Some of the other purposes that Koziol identified suggest that including the suspected vehicle owner's information on a parking ticket has an *incidental* effect that is beneficial.  Koziol testified that ticket recipients who see their information on the ticket "know that we know who they are and they're going to be held responsible . . . , so they are more likely to pay."  *Id.* at 39.  He said the same is true of a juvenile who receives a ticket while driving a parent's car and is inspired to pay the fine upon seeing the information on the ticket for fear that a notice of the violation will be sent to the parent. Koziol made similar comments with respect to rental car drivers and a ticket recipient who fears his credit rating will slide if he cannot prove it was he who paid the ticket. Koziol also said the information on the tickets can serve an error correction function, such as when someone buys a vehicle but the previous owner did not remove the license plates; the prior owner then receives tickets for violations incurred by the new owner.  The tickets with the prior owner's information defeat the new owner's defense

that he did not know the tickets were not credited to him. Koziol testified that this type
of incident has happened "[a] lot of times." *Id.* at 46. None of this, however, would
appear to concern use of personal information by a government agency to carry out its
functions, use in connection with driver safety or theft, or use in connection with a court
or administrative proceeding. *See* 18 U.S.C. § 2721(b)(1), (2) & (4). In short, the Court
has a hard time seeing how these purposes identified by Koziol would establish that
"the actual information disclosed . . . is *used* for the identified purpose" as required by
the Seventh Circuit's decision. *Senne*, 695 F.3d at 606.

Some of the purposes that Koziol identified do, however, indicate actual use of
personal information that the Village prints on tickets. Koziol discussed how watch
commanders at police stations use the information to consider whether to void tickets
claimed to have been incorrectly issued to out-of-towners. A commander "operates off
that complaining person's copy," and "can look and see that the address is from another
area and he can determine if the guy is telling him the truth." *Id.* at 41. The commander
learns that the person presenting the ticket is "probably the guy that got the ticket based
on his physical description and what's on the citation." *Id.* Along with other information
on the ticket, "[t]hat's all the watch commander has in front of him is that cardboard
stock when someone comes in, so we find that important." *Id.* at 42. Koziol also
testified that the information on the tickets serves the same identification purpose during
traffic stops in which the driver has no identification but does have a parking ticket. In
such cases, "many times" with non-English speakers, drivers "have a parking ticket in
their glove box and hand that to you immediately because they have trouble
communicating." *Id.* at 47. Then, "[t]he officer looks at that citation and he can take it

13

back to his car, run that information to determine if the person is a licensed driver and that kind of a thing." *Id.* Koziol also said the information helps drivers when an officer issues a ticket to the wrong person. "They come in here and say I got this citation, I was there but this is not me," Koziol testified. *Id.* at 44. "[W]hen someone is that decent to come in—and they do it quite often—we automatically void the ticket out." *Id.*

Senne argues that the Village's stated uses for including the personal information on the tickets are "speculative," "uncorroborated," and otherwise inadequate. Pl.'s Resp. at 8; *see also* Pl.'s Resp. to Def.'s LR 56.1 Stat ¶¶ 42–55. He also argues that the Village did not use Senne's particular personal information for any of the stated purposes. Senne also opines, without citing evidence, that "[c]learly, the purpose of the envelope copy of the ticket being left on the car is to inform the vehicle's operator that they have violated an ordinance and that the vehicle owner may be financially indebted to the Village." *Id.* at 9. Senne further argues that Christians, the officer who issued the ticket, "didn't need or use the information printed on the envelope copy for anything." *Id.* He also contends the same is true with "the clerks in the finance department," who merely use the ticket number from a parking ticket and not the personal information printed on it. *Id.* He also says "the cashier's [sic] do not look at any other information, such as address, operator license number, height, weight, or sex, written on the ticket." *Id.* Because "paid tickets" are "bundled up and sent over to records department [sic] so they can be destroyed immediately," Senne argues, "none of the information printed on the envelope copy is ever used by the issuing officer or cashier recording payment."

*Id.*[4]  From these factual assertions, Senne concludes that "the public does not use the

information" and "Palatine never uses the personal information . . . for anything." *Id.* at

9–10.

Senne's contention that the Village's issuing officers, finance clerks, and cashiers

do not use the information on the tickets is non-responsive to the Village's contention

that other police officers use the information in a variety of ways.  His contention

therefore does not indicate the existence of a genuine issue of material fact.  Indeed,

the Village does not dispute Senne's factual statements about the processing of paid

tickets by clerks in the police department.  And even if Senne is correct that paid tickets

are destroyed, that does not implicate any of the *unpaid* tickets that the Village contends

are used for identification purposes during traffic stops, or when a watch commander

voids a ticket for an out-of-town resident.

Nonetheless, Senne's arguments bring to the fore a basic question about exactly

what is required for one who discloses personal information covered by the DPPA to

establish that its disclosure was permissible under section 2721(b).  The Seventh

Circuit's decision, though it rejected the Village's arguments for purposes of its motion to

dismiss, is less than clear regarding how a court should go about determining whether

the disclosed information is actually used for the purpose stated in the statutory

---

[4] None of these arguments in Senne's brief is supported by a citation.  The Court was
able to locate support for most of the arguments in Senne's Local Rule 56.1 statement
of facts.  The Village is correct to observe, however, that the cited portion of the record
does not support Senne's contention in his statement of facts that the Village police
clerk his lawyer deposed, Mary Goluszka, was responsible for processing Senne's own
ticket.  *See* Def.'s Resp. to Pl.'s LR 56.1 Stat. ¶ 15 (plaintiff's statement that "Mary
Goluszka did not input Senne's driver's operator license number, date of birth, height,
weight, or sex into the database, because she does not use that information" (citing Pl.'s
Ex. A at 19:4-13, 40:1–43:4, Pl.'s Ex. A-5)).

exception. *See Senne*, 695 F.3d at 609. For example, does a court evaluate the use of the information on a case-by-case basis, to see if the use in a given situation was warranted—or is a general policy justifying the use enough? Does section 2721(b) require proof that the information is *always* used for the identified purpose? Is it enough that it is sometimes used for that purpose? Or is the possibility of use for the particular purpose sufficient? Further, does the party claimed to have disclosed personal information have to establish that a permissible purpose motivated the disclosure in the first place, or is an after-the-fact justification or an incidental use sufficient?

The Court believes that the correct reading is that the *ultimate* or *potential* use of personal information qualifies as acceptable use under the DPPA if it is for a permissible purpose listed in section 2721(b). As the Seventh Circuit has noted, "the DPPA as a whole . . . is concerned with the *ultimate* use or uses to which personal information contained in motor vehicle records is put." *Graczyk v. West Publ'g Co.*, 660 F.3d 275, 279 (7th Cir. 2011) (emphasis added). In *Graczyk*, the plaintiffs alleged that West Publishing's resale of personal information to the public was not a permissible use under section 2721(b), and that the DPPA requires that "the person requesting the records must have an immediate permissible use for them." *Id.* But because neither side denied that each "ultimate user" of the information had a permissible use under section 2721(b), West was permitted to "obtain and store DMV records in bulk" so that it might later sell records to those with permissible uses. *Id.* In other words, the proper use was not required to be immediate or certain, and to determine otherwise "would undermine the statute's countervailing purpose, which is to allow legitimate users to access the records." *Id.* at 280.

Several courts have made similar conclusions when dealing with sales of personal information that a vendor has obtained from a state. In *Taylor v. Acxiom Corp.*, 612 F.3d 325, 334 (5th Cir. 2010), the plaintiffs claimed that a vendor's purchase of "the records in bulk with an expectation and purpose of valid potential use is not a permissible use under the DPPA." The court held "that when a person obtains motor vehicle records in bulk for one of the permissible uses listed in 18 U.S.C. § 2721(b), and does not actually use, or intend to use, any of the information in a manner prohibited by section 2721(b), then that person does not" violate the statute. *Id.* at 337. To illustrate its reasoning, the Fifth Circuit observed that "[a] lawyer will never read all the opinions in all 1,000 volumes of Federal Second (and may likely never read anything in at least a few of the volumes). But he or she still buys the reporter set for the purpose of legal research." *Id.* Other circuits have likewise decided that such bulk purchasers of driver information do not violate the DPPA even though they may not specifically use each piece of information they buy. *See Cook v. ACS State & Local Solutions, Inc.*, 663 F.3d 989, 995 (8th Cir. 2011) ("[N]o language in the statute requires immediate use; the DPPA only requires that the information be obtained for a permissible purpose. Indeed, there is no suggestion of a temporal limit anywhere in the DPPA."); *Howard v. Criminal Info. Servs., Inc.*, 654 F.3d 887, 892 (9th Cir. 2011) ("The DPPA does not contain a temporal requirement for when the information obtained must be used for the permitted purpose. Nor is there a requirement that once the information is obtained for a permitted purpose that it actually be used at all.").

Another district court may have put it best when it determined that obtaining personal information for potential future acceptable use is acceptable under the DPPA:

"A person buys an umbrella for use in the rain, even if the person is fortunate enough never to actually use it. A homeowner buys a fire extinguisher for use in a fire, even if there is no fire." *Welch v. Jones*, 770 F. Supp. 2d 1253, 1259 (N.D. Fla. 2011). The court further noted that "[h]ad Congress intended § 2721(b) to require actual use—rather than only a purpose to use when appropriate—it could have said so." *Id.*

This reasoning applies equally to this case. The Village does not contend that the personal information that was included on the parking ticket issued to Senne was actually used for the error correction or identification-related purposes that Koziol identified. And although it is conceivable that one of the incidental purposes that Koziol identified—the proposition that putting a person's name and identifying information on a ticket makes it more likely the person will pay—would apply in Senne's particular situation, that is less than clear. The Village's primary justifications, however, are not ticket-specific. Rather, the Village essentially contends because personal information is useful, and actually used, in some situations involving parking tickets, its disclosure on all parking tickets is justified. When Senne contends that the Village's stated justifications are speculative, what he appears to mean is that they don't necessarily apply in any given situation, and there is no way of telling in advance the situations in which they actually will apply. Senne does not offer, however, any evidence that the Village officers do *not* sometimes use personal information printed on parking tickets to identify people driving without licenses, or that watch commanders do not use the ticket to identify its bearer and then void it.

The Court concludes that the justifications that the Village offers for its disclosure of DPPA-protected personal information are sufficient under subsection 2721(b)(1),

though not under the other subsections the Village cites. As the Court has indicated,

the Village has offered uncontradicted evidence that in some situations, it uses the

personal information that it discloses on parking tickets to void erroneously issued

tickets and to help identify drivers lacking other identification. Not all of the personal

information disclosed on parking tickets in Palatine may be absolutely necessary for this

purpose, but the Seventh Circuit's earlier decision in this case makes it clear that to be

permissible, a use of protected information need not be "necessary" or a "best

practice[ ]." *Senne*, 695 F.3d at 606 n.12. In line with that statement and those of other

courts that have confronted similar issues, the Court is persuaded that the Village's

potential or ultimate uses of personal information as described above are for uses by a

government agency in carrying out its functions under section 2721(b)(1), and are thus

in compliance with the DPPA. Those purposes justify the inclusion of personal

information on parking tickets, irrespective of whether that information is actually used

for those purposes in a given particular situation.

### Conclusion

For the foregoing reasons, the Court grants defendant Village of Palatine's

motion for summary judgment [docket no. 112] and directs the Clerk to enter judgment

in favor of the defendant. Plaintiff's motion for class certification is terminated as moot

[docket no. 91].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 27, 2013