CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-3671

JASON SENNE, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF PALATINE, ILLINOIS,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 5434 — **Matthew F. Kennelly**, *Judge*.

ARGUED APRIL 6, 2015 — DECIDED APRIL 28, 2015

Before POSNER and SYKES, *Circuit Judges*, and SIMON, *Chief District Court Judge*.[*]

POSNER, *Circuit Judge*. One evening in 2010 Jason Senne parked his car on the street in front of his house in the Village of Palatine, Illinois, a suburb of Chicago. A Village ordinance forbids parking on the street between 1 a.m. and 6

---

[*] Hon. Philip P. Simon of the Northern District of Indiana.

Case: 1:10-cv-05434 Document #: 152 Filed: 06/25/15 Page 2 of 8 PageID #:1808
Case: 13-3671 Document: 00712555342 Filed: 06/25/2015 Pages: 8

2 No. 13-3671

a.m. for more than 15 minutes. At 1:35 a.m. a police officer wrote a $20 parking ticket and stuck it face down under the windshield wiper on the driver's side of the car. The officer filled in the ticket with Senne's name, date of birth, sex, height, weight, driver's license number, and address (which turned out to be outdated), plus information about the vehicle (its color, make, model, license plate, and vehicle identification number). We do not understand Senne to be denying that his car had been parked on the street for more than 15 minutes before it was ticketed.

A week later Senne filed this suit, which he sought to be certified as a class action, against the Village. The suit asks for statutory damages for the Village's having, he alleges, violated the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 *et seq*. The Act forbids "a State department of motor vehicles, and any officer, employee, or contractor thereof, … [to] knowingly disclose or otherwise make available to any person or entity … personal information … about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b)." § 2721(a)(1). It further provides that "an authorized recipient of personal information" from the department, such as the municipal police department that ticketed Senne, "may resell or redisclose personal information only for a use permitted under subsection (b)." § 2721(c). Subsection (b), to which both subsections that we've just cited refer, permits "disclosure" of personal information for fourteen permissible uses, including "use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and

No. 13-3671 3

orders, or pursuant to an order of a Federal, State, or local court," § 2721(b)(4), as well as for "use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." § 2721(b)(1). To complete the picture the Act defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information." § 2725(3).

Two years later, after a panel of this court had affirmed the dismissal of the suit by the district court on the ground that the disclosure of Senne's personal information on the parking ticket was a permissible use, the court granted rehearing en banc. The en banc court agreed with the panel that placing the parking ticket on the windshield of Senne's car had been a "disclosure" within the meaning of the Act, 695 F.3d 597 (7th Cir. 2012), but remanded for a determination by the district court of "whether all of the disclosed information actually *was used* in effectuating" one of the permissible purposes that we quoted above, 695 F.3d at 608 (emphasis in the original)—namely, either a use by the Palatine police in performing its duties or a use in connection with the service of process to initiate the administrative proceeding relating to the parking fine. A proceeding to determine whether to impose a parking fine is an administrative proceeding, and placing the parking ticket on the windshield of the alleged violator's vehicle is the usual method of serving process for parking violations.

Case: 1:10-cv-05434 Document #: 152 Filed: 06/25/15 Page 4 of 8 PageID #:1810

On remand, following discovery and the filing of cross motions for summary judgment, the district court granted summary judgment in favor of the Village on the ground that the information disclosed on the parking tickets had furthered both of these purposes. Senne has again appealed.

Palatine's chief of police was deposed in the district court and testified to a number of permissible uses of the personal information that police officers place on parking tickets. One is that such information on a parking ticket increases the likelihood that the ticket will be paid, because the driver or owner knows that the police know his identity and address and will therefore have no difficulty locating him. Another is that a person who receives a parking ticket on a car that he rented or borrowed, rather than owns, learns from the personal information on the ticket who is deemed responsible for paying the ticket—the owner. Knowing this, the borrower or renter will realize that, as the party responsible for the ticketing of the vehicle, he should pay the ticket rather than leave that to the innocent owner.

And there is more. A person who thinks the ticket was issued in error, for example because he is not from Palatine (the police department's policy is not to issue parking tickets to out of town visitors), will sometimes take the ticket to a police station and ask the watch commander to void it. The commander can, just by looking at the ticket, determine whether the address on it is a Palatine address and whether the person matches the description of the person named on the ticket, as opposed to being for example that person's teenage son trying to get the ticket voided before his parent finds out that he got a ticket. More generally, it appears that often a person bringing the ticket to the police station will

Case: 1:10-cv-05434 Document #: 152 Filed: 06/25/15 Page 5 of 8 PageID #:1811
Case: 13-3671 Document: 00712555342 Filed: 06/25/2015 Pages: 8

No. 13-3671 5

tell the watch commander that although the name on the ticket is not his name, it was his car that was ticketed and he doesn't want an innocent person to have to pay the ticket. Impressed by the volunteered confession, the watch commander invariably voids the ticket.

Furthermore, the police chief testified that a person whose English is poor often will, upon being stopped by a police officer for a traffic violation, identify himself by showing the officer a Palatine parking ticket that he's kept in his glove compartment; the ticket will have his name and address on it, and so identify him. And likewise a person who is stopped and discovers he's forgotten his driver's license but has a parking ticket in his glove compartment that has his name and address on it and he shows it to the officer. In both cases information on the ticket about the person's height, weight, and age will enable the officer to determine whether the person named on the ticket is the driver.

The police chief further testified that the personal information on the ticket enables drivers to correct errors in the Village's motor vehicle records. A former owner of a car may have failed to remove the license plates when he sold it, causing him to be charged with the new owner's parking violations until the state is notified of the sale. Similarly, receiving a ticket with an outdated address will remind a driver who has moved that he has forgotten to update his motor vehicle record—as happened to Senne when he received the ticket that precipitated his lawsuit. He doesn't deny that disclosing such information on a parking ticket serves this error-correction function or that accurate motor vehicle records assist the police in law enforcement.

In fact Senne presented *no* evidence to contest the police chief's testimony, and so he failed to create an issue for trial. His position is not that personal information on a parking ticket has no utility to the police but that the police made no use of the personal information on *his* parking ticket. In so arguing he is trying to exploit an ambiguity in the Driver's Privacy Protection Act. While authorizing disclosure of personal information "for use in connection with any … administrative … proceeding," the Act doesn't define "use." But the "for" in front of "use" is a compelling clue to its meaning. Suppose you buy an umbrella. And someone not too intelligent asks you: "*why* did you buy an umbrella?" And you answer "for use when it rains." Now it may be that you live in a dry climate, where it rarely rains. Maybe eventually you discard the umbrella, never having used it. And yet you had bought it "for use" in shielding you from rain rather than to just sit in your umbrella stand. And similarly the personal information collected by the Palatine police department that we discussed was "for use" in connection with the department's duties, whether or not each item of information, such as Senne's address, would ever be used.

This is the uniform understanding of the cases that have discussed the issue—including a case in this circuit left undisturbed by our en banc decision in the present litigation. *Graczyk v. West Publishing Co.*, 660 F.3d 275, 279 (7th Cir. 2011), held that West Publishing Company could "obtain and store DMV [Department of Motor Vehicle] records [containing personal information] in bulk in order to later sell them to someone with a permissible use"; the uses were not required to be immediate or certain. To the same effect see *Taylor v. Acxiom Corp.*, 612 F.3d 325, 337 (5th Cir. 2010), noting by way of illustration that "a lawyer will never read all

Case: 1:10-cv-05434 Document #: 152 Filed: 06/25/15 Page 7 of 8 PageID #:1813
Case: 13-3671 Document: 00712555342 Filed: 06/25/2015 Pages: 8

No. 13-3671 7

the opinions in all 1,000 volumes of Federal Second (and may likely never read anything in at least a few of the volumes). But he or she still buys the reporter set for the purpose of legal research." The broader point is that a library buys books to be used by being read, but some library books are never read. See also *Cook v. ACS State & Local Solutions, Inc.*, 663 F.3d 989, 995 (8th Cir. 2011); *Howard v. Criminal Information Services, Inc.*, 654 F.3d 887, 892 (9th Cir. 2011); and *Welch v. Jones*, 770 F. Supp. 2d 1253, 1259 (N.D. Fla. 2011)—the source of our umbrella analogy.

Granted, we need to balance the utility (present or prospective) of the personal information on a parking ticket against the potential harm. It's true that the Act does not state that a permissible use can be offset by the danger that the use will result in a crime or tort. But statutes have to be interpreted to avoid absurd results. There is an argument for placing identifying information such as height and weight on a ticket placed face down under a windshield wiper, but it would be at once unnecessary and an offensive invasion of privacy to place that information in a newspaper, on a billboard, or on the police department's website. The balance between law enforcement and privacy favors allowing discreet disclosure of limited information of credible value to law enforcement, since the potential harm of such disclosure is negligible but the benefits nonnegligible.

It's true that a television actress was murdered in 1989 by a stalker whose private investigator had lawfully obtained her unlisted address from the California Department of Motor Vehicles. The murder was a catalyst of the Driver's Privacy Protection Act. *Taylor v. Acxiom Corp.*, supra, 612 F.3d at 336 and n. 9; *Pichler v. UNITE*, 542 F.3d 380, 400 (3d Cir.

2008) (dissenting opinion). But personal information on a parking ticket placed face down under the windshield wiper on the driver's side does not facilitate stalking. A stalker who had chanced on his intended victim's vehicle would follow her home rather than relying on her to park illegally and on the police to write a parking ticket rich in personal information. The concern that triggered the Driver's Privacy Protection Act was with stalkers who went to motor vehicle bureaus to obtain the home addresses of their intended victims, more than thirty states having made such information available to members of the public for a small fee, as a means of enhancing state revenues. That would be a clear example of where the balance between law enforcement and privacy favored privacy. Senne presents no evidence that anyone has ever taken a parking ticket face down under the driver's windshield wiper in Palatine and turned it over and read and used any of the personal information on the ticket. Nor does he contest the Village's evidence that there has *never* been a stalking or any other crime (such as identity theft), or tort (such as invasion of privacy), resulting from personal information placed on traffic tickets issued by Palatine police. Had the Village been making the information on parking tickets publicly available over the Internet, or had it placed on the tickets highly sensitive information such as the owner's social security number, the risk of a nontrivial invasion of personal privacy from the disclosure would be much greater and probably outweigh the benefits to law enforcement. The Village has never done that.

AFFIRMED.